**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FICA FRIO LIMITED, | : |
| | : |
| *Plaintiff,* | : **ECF CASE** |
| | : |
| -against- | : **COMPLAINT** |
| | : |
| JERRY SEINFELD, | : Case No. 19-cv-1032 |
| | : |
| *Defendant.* | : |
| | : |

Plaintiff, Fica Frio Limited ("Fica Frio," "Plaintiff," or the "Buyer"), by its attorneys Brown Rudnick LLP, for its complaint against Defendant Jerry Seinfeld ("Mr. Seinfeld," "Defendant," or the "Seller"), hereby alleges as follows:

## NATURE OF ACTION

1.      On March 11, 2016, at an auction held by Gooding & Company ("Gooding") at which Mr. Seinfeld and Fica Frio's representatives attended in-person in Amelia Island, Florida (the "Auction"), Fica Frio purchased a purported 1958 Porsche 356 A 1500 GS/GT Carrera Speedster (the "Vehicle") from Mr. Seinfeld for $1.54 million.  However, the Vehicle is not authentic and not the automobile Mr. Seinfeld represented.

2.      The written summary of the Vehicle provided at the Auction (the "Vehicle Summary," attached hereto as Exhibit A) which, on information and belief, was based on information and representations that Mr. Seinfeld provided to Gooding and was approved and/or ratified by Mr. Seinfeld for distribution to Auction attendees and potential bidders, included the following factual statements about the Vehicle, among others: "1958 PORSCHE 356 A 1500 GS/GT CARRERA SPEEDSTER"; "FROM THE JERRY SEINFELD COLLECTION"; "has the distinction of being the only Carrera Speedster known to have been finished at the factory in

Auratium Green"; one of 56 Carrera Speedsters "specified in GS/GT trim" that "left the factory with lightweight aluminum panels"; "this exceptionally rare 1500 GS/GT Carrera Speedster is surely among the finest restored examples of a highly sought-after four-cam Porsche".

3.     The Vehicle Summary provided at the Auction further stated that the Vehicle was "[a]cquired by Jerry Seinfeld in late 2012" and had "been a prized fixture in the collection ever since."

4.     On the basis of these and other representations, and justifiably believing the Vehicle to be authentic as represented by Mr. Seinfeld, Fica Frio purchased the Vehicle at the Auction for $1.54 million.

5.     The Vehicle, however, is not authentic and is not the automobile that Mr. Seinfeld and the Vehicle Summary provided at the Auction represented.

6.     After being informed by Fica Frio that the Vehicle is not authentic, Mr. Seinfeld orally accepted, in a voicemail audio recording, Fica Frio's offer to rescind the sale of the Vehicle and return to Fica Frio the purchase price that Fica Frio had paid to Mr. Seinfeld, plus all costs it incurred, in exchange for Fica Frio returning the Vehicle to Mr. Seinfeld.  Mr. Seinfeld breached that oral agreement, as he has not returned Fica Frio's purchase price nor paid to Fico Frio its costs incurred, in exchange for the Vehicle.

7.     In this action, Fica Frio seeks rescission of the Vehicle sale and the costs it has incurred as a result of purchasing the Vehicle, or, in the alternative, damages for the losses it has suffered in connection with the purchase of the Vehicle.

## **PARTIES**

8.     Plaintiff Fica Frio Limited is a Bailiwick of Jersey entity with its principal place of business at 26 New Street, St. Helier, Jersey, Channel Islands, JE2 3RA.

9.      Defendant Jerry Seinfeld is an individual who is a citizen of the United States and a resident of New York.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2), as there is diversity of citizenship, and the amount in controversy exceeds $75,000.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), as Mr. Seinfeld resides in this District.

## STATEMENT OF FACTS

12.      Gooding held the Auction on March 11, 2016 in Amelia Island, Florida.

13.      Participants in the Auction, including Fica Frio and Mr. Seinfeld, agreed to be bound by the "Important Notices" and "Conditions of Sale" in the Auction catalogue (the "Auction Contract," attached hereto as Exhibit B).

14.      On information and belief, Mr. Seinfeld also entered into a "Consignment Agreement" with Gooding pursuant to which he consigned the Vehicle, among other automobiles, to Gooding to auction and pursuant to which he also agreed to be bound by the Auction Contract, among other consignment terms.

15.      On information and belief, the Vehicle Summary published to and used at the Auction by prospective purchasers, including Fica Frio, was based on information and representations provided to Gooding by Mr. Seinfeld and was approved and/or ratified by Mr. Seinfeld for inclusion in the Vehicle Summary for distribution to and use by Auction attendees and potential bidders.

16.      The Vehicle Summary represented that the Vehicle is an authentic, vintage car that was "FROM THE JERRY SEINFELD COLLECTION."

17.     The Vehicle Summary stated:

> Between 1955 and 1959, Porsche built 151 Carrera Speedsters – a figure that accounts for just 3% of total Speedster production.  From this limited supply, fewer than 90 Carrera Speedsters were specified in GS/GT trim and even fewer – approximately 56 in all – left the factory with lightweight aluminum panels.   For decades, knowledgeable Porsche collectors have regarded these limited-production alloy-paneled GS/GT Speedsters as the ultimate expression of the sporting 356; the few examples that survive today are jealously guarded by their owners.

> The Carrera Speedster presented here, chassis 84908, is a stunning example of a rare thoroughbred Porsche.  According to factory records, this car was completed in May 1958 and specified as a GS/GT with alloy panels.

> . . .

> In addition to its rare mechanical specifications, 84908 [the Vehicle] has the distinction of being the only Carrera Speedster known to have been finished at the factory in Auratium Green.

18.     The Vehicle Summary further stated that the Vehicle was "[a]cquired by Jerry Seinfeld in late 2012" and had "been a prized fixture in the collection ever since."

19.     The Vehicle Summary also stated:

> Offered at public auction for the first time, this exceptionally rare 1500 GS/GT Carrera Speedster is surely among the finest restored examples of a highly sought-after four-cam Porsche.   Eligible for numerous international events, equipped with the most desirable factory specifications, and beautifully presented following an exacting restoration by marque specialist European Collectibles, this Carrera Speedster will appeal to the collector who demands only the very best.

20.     Mr. Seinfeld attended the Auction in person.  *The New York Times* reported that Mr. Seinfeld addressed the Auction's attendees before bidding began: "'Let me be honest with you,' Mr. Seinfeld said.  'I could have gotten rid of every one of these in one day with no problem.  But I wanted to be here with you all, who see these things the way I do and enjoy it the way I do.  I want to see your face and feel your enthusiasm.'"

21.     According to the same *New York Times* report, when the auctioneer took the stage to introduce the first automobile to be auctioned following Mr. Seinfeld's remarks, the auctioneer "mentioned the catalog's description of its 'delicious' interior smell" and added, "'It was Jerry who said, 'Smell it,' he said.  'Well, I did.  I sat in it and smelled it.  And it was wonderful.'"

22.     On information and belief, Spike Feresten, the host of a television car show, attended the Auction and spoke about the automobiles from Mr. Seinfeld's collection to be sold at the Auction at Mr. Seinfeld's invitation.  *The New York Times* reported Mr. Feresten "attended as a Porsche enthusiast and as a friend to Mr. Seinfeld": "'Jerry has been generous enough to let me drive an awful lot of his collection,' Mr. Feresten said, before finding himself unable to resist making a 'Seinfeld' allusion.  'And I can tell you: They're real and they're spectacular.'"

23.     There was no mistaking Mr. Seinfeld's presence at the Auction.  *The New York Times* quoted one collector as saying, "'There's a certain attraction to this particular collection all coming out in one go . . . especially since he's chosen to go this way rather th[a]n selling them off privately.'"

24.     James Haithwaite attended the auction as a representative of Fica Frio.  Mr. Haithwaite was authorized to and did make Fica Frio's $1.4 million winning bid for the Vehicle at the Auction, which, with the Auction's 10% buyer premium, brought the purchase price to $1.54 million.  Carlos Monteverde, an individual connected to Fica Frio, also attended the Auction for a period of time.

25.     During his pre-sale review of the Vehicle at the Auction, Mr. Haithwaite was encouraged to place a bid on the Vehicle.

26.     Mr. Seinfeld did not have a good faith basis to believe that the Vehicle was an authentic "1958 Porsche 356 A 1500 GS/GT Carrera Speedster."  On information and belief, Mr. Seinfeld had reviewed and was familiar with the Vehicle's "history file."  The Vehicle's history file includes the following statement, which, on information and belief, was written by the person who sold the Vehicle to Mr. Seinfeld: "Unfortunately we do not have a lot of information on the 1958 Porsche 356 A 1500 Carrera GT Speedster VIN 84908.  We purchased the car from a broker who would not take me to the cars [sic] original location to meet the family that owned it originally.  I tried very hard to find out more but never could."

27.     Following Fica Frio's purchase of the Vehicle, it was brought to the United Kingdom and parked at the Maxted-Page Limited facility in Essex, England.

28.     In March of 2017, Fica Frio asked Lee Maxted-Page, the Managing Director of Maxted-Page Limited and one of the world's foremost historic Porsche dealers, to prepare a proposal for a potential sale of the Vehicle.

29.     Upon inspection and investigation into the Vehicle, Mr. Maxted-Page expressed concern regarding the limited contents of the Vehicle's history file, particularly the lack of photographic evidence of the restoration work.  Ultimately, Mr. Maxted-Page was not comfortable marketing the Vehicle.

30.     Subsequent inspection and investigation revealed that the Vehicle is not authentic.

31.     Between mid-February 2018 and through April 2018, Fica Frio had discussions with Gooding and informed Gooding of its concerns regarding the authenticity of the Vehicle and, ultimately, following further inspection and investigation, of the fact that the Vehicle is not authentic.  Fica Frio, in good faith, sought Gooding's assistance in making arrangements with Mr. Seinfeld to rescind and unwind the sale of the Vehicle.  On information and belief, Gooding

then informed Mr. Seinfeld and/or his representatives that Fica Frio had advised that the Vehicle Mr. Seinfeld had sold at the Auction is not authentic and that Fica Frio offered to rescind the sale and return the Vehicle in exchange for the return of Fica Frio's money and reimbursement for costs it incurred.

32.     On June 21, 2018, Mr. Seinfeld telephoned Mr. Monteverde directly and left a voicemail audio recording for Mr. Monteverde (the "Voicemail").  In the Voicemail, Mr. Seinfeld identified himself, stated that he heard from Gooding about the "counterfeit car," stated that he wanted to "offer my apology for this nuisance and assure you that you will be completely indemnified in full and not have to keep the car and get all your money back," and stated "I did want to apologize to you personally for that happening."

33.     In the Voicemail, Mr. Seinfeld also stated that he "would also love to know how your guys figured it out because I find that to be interesting cause that's impressive my guys did not I guess see anything amiss with the car when I bought it."

34.     Despite the representations Mr. Seinfeld made in the Voicemail, and his agreement to rescind the transaction and return to Fica Frio its purchase price and costs, Mr. Seinfeld has subsequently failed to return Fica Frio's purchase money in exchange for Fica Frio returning the Vehicle.  Fica Frio hereby offers again to rescind the Vehicle sale and return the Vehicle to Mr. Seinfeld in exchange for the return of Fica Frio's purchase price and costs incurred by Fica Frio as a result of purchasing the Vehicle.

## FIRST CLAIM FOR NEGLIGENT MISREPRESENTATION

35.     Plaintiff repeats and realleges the allegations in Paragraphs 1 through 34 of its Complaint as if set forth herein.

36.     Mr. Seinfeld, who, on information and belief, provided the information and representations contained in the Vehicle Summary to Gooding and approved and/or ratified the Vehicle Summary and its distribution to Auction attendees and potential bidders, including Fica Frio, represented that the Vehicle is an authentic "1958 Porsche 356 A 1500 GS/GT Carrera Speedster" in the Vehicle Summary.  Mr. Seinfeld also caused Gooding and/or its agents and auctioneer to represent that the Vehicle is authentic.  Mr. Seinfeld represented that the Vehicle is authentic and caused Gooding and/or its agents and auctioneer to represent that the Vehicle is authentic in order to influence Auction attendees and potential bidders, such as Fica Frio, and encourage bids to purchase the Vehicle.

37.     Whether the Vehicle is authentic is a material fact.

38.     The Vehicle is not an authentic "1958 Porsche 356 A 1500 GS/GT Carrera Speedster."

39.     As aforesaid, including, without limitation, the Vehicle's history file which was known to Mr. Seinfeld, Mr. Seinfeld did not have a reasonable basis to believe that the Vehicle is authentic.

40.     Mr. Seinfeld's representations as aforesaid, including that the Vehicle is authentic, were made with the intention of inducing, and did actually induce, Fica Frio justifiably to rely on it and cause Fica Frio to purchase the Vehicle.

41.     Under the circumstances, including, without limitation, Mr. Seinfeld appearing personally at the Auction, Mr. Seinfeld's remarks at the auction, and the Vehicle Summary and all the information and representations contained therein, Fica Frio justifiably relied on the representations that the Vehicle is authentic.

42.     As a result of Mr. Seinfeld's negligent misrepresentations as aforesaid, Fica Frio paid $1.54 million for a Vehicle that is not the authentic Vehicle as represented by Mr. Seinfeld.

43.     As a result of the foregoing, Plaintiff is entitled to rescission.

44.     In the alternative, as a result of the foregoing, Plaintiff has suffered and is entitled to damages.

## SECOND CLAIM FOR INTENTIONAL MISREPRESENTATION

45.     Plaintiff repeats and realleges the allegations in Paragraphs 1 through 44 of its Complaint as if set forth herein.

46.     Mr. Seinfeld, who, on information and belief, provided the information and representations contained in the Vehicle Summary to Gooding and approved and/or ratified the Vehicle Summary and its distribution to Auction attendees and potential bidders, including Fica Frio, represented that the Vehicle is an authentic "1958 Porsche 356 A 1500 GS/GT Carrera Speedster" in the Vehicle Summary.  Mr. Seinfeld also caused Gooding and/or its agents and auctioneer to represent that the Vehicle is authentic.

47.     Whether the Vehicle is authentic is a material fact.

48.     The Vehicle is not an authentic "1958 Porsche 356 A 1500 GS/GT Carrera Speedster."

49.     On information and belief, Mr. Seinfeld, alternatively, knew that the Vehicle is not authentic at the time the representations were made as to the Vehicle's authenticity or acted with reckless disregard of the truthfulness of the representations that the Vehicle is authentic at the time the representations were made as to its authenticity.

50.     Mr. Seinfeld's representations as aforesaid that the Vehicle is authentic were made with the intention of inducing, and did actually induce, Fica Frio justifiably to rely on it and caused Fica Frio to purchase the Vehicle.

51.     Under the circumstances, including, without limitation, Mr. Seinfeld appearing personally at the Auction, Mr. Seinfeld's remarks at the auction, and the Vehicle Summary and all the information and representations contained therein, Fica Frio justifiably relied on the representation that the Vehicle is authentic.

52.     As a result of Mr. Seinfeld's intentional misrepresentations as aforesaid, Fica Frio paid $1.54 million for a Vehicle that is not the authentic Vehicle as represented by Mr. Seinfeld.

53.     As a result of the foregoing, Plaintiff is entitled to rescission.

54.     In the alternative, Plaintiff has suffered and is entitled to damages as well as punitive damages.

### THIRD CLAIM FOR MUTUAL MISTAKE

55.     Plaintiff repeats and realleges the allegations in Paragraphs 1 through 54 of its Complaint as if set forth herein.

56.     Mr. Seinfeld, who, on information and belief, provided the information and representations contained in the Vehicle Summary to Gooding and approved and/or ratified the Vehicle Summary and its distribution to Auction attendees and potential bidders, including Fica Frio, represented that the Vehicle is an authentic "1958 Porsche 356 A 1500 GS/GT Carrera Speedster" in the Vehicle Summary.  Mr. Seinfeld also caused Gooding and/or its agents and auctioneer to represent that the Vehicle is authentic.

57.     Whether the Vehicle is authentic is a material fact.

58.     The Vehicle is not an authentic "1958 Porsche 356 A 1500 GS/GT Carrera Speedster."

59.     Fica Frio was mistaken and Mr. Seinfeld, alternatively, was mistaken as to the Vehicle's authenticity, as both at the time of the Auction believed the Vehicle to be authentic, but it is not authentic.

60.     At all relevant times, Fica Frio exercised reasonable diligence, under the circumstances, and acted in good faith and in accordance with reasonable standards of dealing.

61.     That the Vehicle is not authentic was not readily detectable by Fica Frio by the means of inspection available to it at the Auction.

62.     Mr. Seinfeld would not have put the Vehicle up for auction at the Auction and Fica Frio would not have bid on and ultimately purchased the Vehicle at the Auction but for the mistake as to the Vehicle's authenticity.

63.     As a result of the foregoing, Plaintiff is entitled to rescission.

64.     In the alternative, as a result of the foregoing, Plaintiff has suffered and is entitled to damages.

## FOURTH CLAIM FOR BREACH OF ORAL AGREEMENT

65.     Plaintiff repeats and realleges the allegations in Paragraphs 1 through 64 of its Complaint as if set forth herein.

66.     After determining that the Vehicle is not authentic, Fica Frio sought Gooding's assistance in making arrangements with Mr. Seinfeld to rescind and unwind the sale of the Vehicle.  On information and belief, Gooding informed Mr. Seinfeld and/or his representatives that Fica Frio had advised that the Vehicle Mr. Seinfeld had sold at the Auction is not authentic

and that Fica Frio offered to rescind the sale and return the Vehicle in exchange for the return of Fica Frio's money and reimbursement of the costs it incurred.

67.     On June 21, 2018, Mr. Seinfeld telephoned Mr. Monteverde directly and left the Voicemail.  In the Voicemail, Mr. Seinfeld identified himself, stated that he heard from Gooding about the "counterfeit car," and accepted Fica Frio's offer to rescind the sale when Mr. Seinfeld stated that he wanted to "offer my apology for this nuisance and assure you that you will be completely indemnified in full and not have to keep the car and get all your money back," and stated "I did want to apologize to you personally for that happening."

68.     Despite Mr. Seinfeld's acceptance of Fica Frio's offer and the representations Mr. Seinfeld made in the Voicemail that Fica Frio "will be completely indemnified in full," will "not have to keep the car" and will "get all your money back," Mr. Seinfeld has subsequently failed to return Fica Frio's purchase money and costs in exchange for Fica Frio returning the Vehicle, all in wrongful breach of the oral agreement he reached with Fica Frio.

69.     As a result of the foregoing, Plaintiff is entitled to specific performance of its oral agreement with Mr. Seinfeld.

70.     In the alternative, as a result of the foregoing, Plaintiff has suffered and is entitled to damages.

## FIFTH CLAIM FOR BREACH OF EXPRESS WARRANTY

71.     Plaintiff repeats and realleges the allegations in Paragraphs 1 through 70 of its Complaint as if set forth herein.

72.     The Vehicle Summary constituted an express warranty under California Commercial Code § 2313(1)(a)-(b), as it included factual statements made by Mr. Seinfeld as to

the Vehicle's authenticity that became part of the basis of the bargain resulting in the sale of the Vehicle to Fica Frio.

73.     The Vehicle sold did not conform to the Vehicle Summary description because the Vehicle is not an authentic "1958 Porsche 356 A 1500 GS/GT Carrera Speedster" as stated in the Vehicle Summary.

74.     As a result of the foregoing, Plaintiff has suffered and is entitled to damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Fica Frio prays for judgment against Defendant as follows:

1.     Entry of Judgment in Fica Frio's favor and against Mr. Seinfeld rescinding the Vehicle sale and awarding Fica Frio all of the fees, costs, and expenses it has incurred, including the purchase price and all associated costs, in an amount to be determined at trial, together with interest thereon;

2.     In the alternative, entry of Judgment in Fica Frio's favor and against Mr. Seinfeld for damages Fica Frio has suffered and all of the fees, costs, and expenses it has incurred, including the purchase price and all associated costs, in an amount to be determined at trial, together with interest thereon;

3.     In the alternative, entry of Judgment in Fica Frio's favor and against Mr. Seinfeld for specific performance of Fica Frio's oral agreement with Mr. Seinfeld, together with interest thereon;

4.     In connection with Fica Frio's claim of intentional misrepresentation, punitive and exemplary damages; and

5.     Grant such other and further relief as this Court deems fair and equitable.

Dated: New York, New York         **BROWN RUDNICK LLP**
       February 1, 2019


       By:    /s/ David J. Molton
              David J. Molton
              D. Cameron Moxley
              Seven Times Square
              New York, New York 10036
              Telephone: (212) 209-4800
              Facsimile: (212) 209-4801
              Email: dmolton@brownrudnick.com
              Email: cmoxley@brownrudnick.com

              *Counsel for Plaintiff Fica Frio Limited*