UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
FICA FRIO, LTD.,                    :
                                    :
             Plaintiff,             :      19 Civ. 1032 (VM)
                                    :
      - against -                   :      **DECISION AND ORDER**
                                    :
JERRY SEINFELD,                     :
                                    :
             Defendant.             :
                                    :
-----------------------------------X
JERRY SEINFELD,                     :
                                    :
             Third-Party            :
             Plaintiff,             :
                                    :
      - against -                   :
                                    :
EUROPEAN COLLECTIBLES, INC.,        :
                                    :
             Third-Party            :
             Defendant.             :
                                    :
-----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/22/20

**VICTOR MARRERO, United States District Judge.**

   This case concerns the sale of an allegedly inauthentic
Porsche by third-party defendant European Collectibles, Inc.
("European Collectibles") to defendant Jerry Seinfeld
("Seinfeld") and the sale of the same vehicle by Seinfeld to
plaintiff Fica Frio Limited ("Fica Frio").

   On February 1, 2019, Fica Frio filed a complaint against
Seinfeld, alleging that Seinfeld sold an inauthentic 1958
Porsche 356 A 1500 GS/GT Carrera Speedster (the "Vehicle") to
Fica Frio while representing that the Vehicle was authentic.

(See "Complaint," Dkt. No. 1.) Fica Frio alleges causes of action for negligent misrepresentation, intentional misrepresentation, mutual mistake, breach of oral agreement, and breach of express warranty. (Compl. ¶¶ 35-74.)

In the third-party complaint filed in this action, Seinfeld maintains that he "has no knowledge of whether Fica Frio's allegations regarding the authenticity of the Vehicle are true" but that he purchased the Vehicle from third-party defendant European Collectibles in reliance on European Collectibles' representations regarding the Vehicle's authenticity. ("Third-Party Complaint," Dkt. No. 11 ¶¶ 3-4, 9.) Seinfeld asserts causes of action against European Collectibles for fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, breach of express warranty under California Commercial Code Section 2313, breach of contract, rescission, and equitable indemnity. (Id. ¶¶ 67-112.)

Consistent with the Court's Individual Rules, on April 10, 2019, European Collectibles wrote to Seinfeld's counsel regarding an anticipated motion to dismiss the Third-Party Complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Rule 12(b)(2)"). (Dkt. No. 17.) Seinfeld responded by letter dated April 18, 2019, identifying reasons why he believed such a

motion would not succeed. (See Dkt. No. 19.) By letter dated April 26, 2019, European Collectibles notified the Court that the parties had been unable to resolve their differences. (Dkt. No. 20.) At European Collectibles' request (see id), the Court held a pre-motion telephone conference on May 20, 2019 at which the Court heard argument on European Collectibles' letter request to file a motion to dismiss (see Minute Entry Dated May 20, 2019). The Court subsequently deemed the letters of European Collectibles (Dkt. Nos. 17 and 20) as a motion to dismiss the Third-Party Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) (the "Motion").[1] (Dkt. No. 25.) For the reasons set forth below, the Motion is DENIED.

## I. **BACKGROUND**

### A. FACTUAL BACKGROUND[2]

Seinfeld is an individual residing in the state of New York. Seinfeld employs Sam Cabiglio ("Cabiglio") to purchase and sell cars on his behalf.

European Collectibles is a California corporation and licensed automobile dealer with its principal place of

---

[1] Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming district court ruling deeming exchange of letters as motion to dismiss).
[2] Except as otherwise noted, this section derives from the factual allegations within the Third-Party Complaint, which the Court must accept as true for the purposes of ruling on a 12(b)(2) motion to dismiss. See infra Part II.

business in Costa Mesa, California. European Collectibles represents on its website that it restores cars and ships them domestically and internationally. (Third-Party Compl. ¶ 28.) Nicholas Clemence ("Clemence") is the owner, Chief Executive Officer, Chief Financial Officer, Secretary, and sole director of European Collectibles. Chris Casler ("Casler") serves as European Collectibles' sales manager.

On February 2, 2013, Casler emailed Cabiglio to propose a sale of the Vehicle. In this email, Casler described the car as a "1958 Porsche 356A T2 1500 GT Carrera Speedster" and one of thirteen Speedsters finished in "Auratium Green with Black" at the factory. (Id. ¶ 34 (quoting "Casler Email," Dkt. No. 11-2).) Casler also represented that European Collectibles used all original parts to restore the Vehicle. (Id. (quoting Casler Email).) After receiving the email, Cabiglio called Casler to learn more about the Vehicle. Altogether, Cabiglio spoke with Clemence and Casler by phone on at least four occasions before Seinfeld purchased the Vehicle. On or about February 11, 2013, Cabiglio inspected the Vehicle at European Collectibles' headquarters in Costa Mesa, California. Clemence, Casler, and another European Collectibles employee were present during the inspection. At some point, European Collectibles furnished a "Porsche Certificate of Authenticity" that listed the Vehicle's

identification number, model year, and type. The certificate was signed by the President and Chief Executive Officer of Porsche Cars North America, Inc.

On February 14, 2013, European Collectibles executed a Purchase Order that identifies Seinfeld as the buyer of the Vehicle and provides his New York address. ("Purchase Order," Dkt. No. 11-4.) That same day, Seinfeld purchased the Vehicle from European Collectibles for $1.2 million.

B.   EUROPEAN COLLECTIBLES' MOTION TO DISMISS

In its April 10 letter, European Collectibles asserts that this Court lacks personal jurisdiction over European Collectibles because its actions in connection with the sale occurred in California. (Dkt. No. 17, at 1.) Specifically, European Collectibles notes that it communicated only with Cabiglio, a California resident, who inspected the Vehicle in California. (Id.) European Collectibles denies having any direct contact with Seinfeld. (Id.) European Collectibles also claims that Cabiglio directed European Collectibles to ship the Vehicle to a hangar in California. (Id.) According to European Collectibles, no one apprised it of the Vehicle's ultimate destination. (Id.)

European Collectibles argues that because its actions in connection with the sale occurred within California, the sale does not constitute a transaction of business in New York

within the meaning of New York's long arm statute. Additionally, European Collectibles claims that it did not purposefully direct any actions at New York and did not expect its conduct to have consequences in New York. (Id. at 2.) Finally, European Collectibles denies having continuous and systematic contacts with New York. (Id.)

By letter dated April 18, 2019, Seinfeld responded that he has made the requisite *prima facie* showing that this Court has personal jurisdiction over European Collectibles. (See Dkt. No. 19.) Seinfeld contends that European Collectibles is amenable to personal jurisdiction under either of two subsections of New York's long arm statute, New York Civil Practice Law and Rules ("C.P.L.R.") Sections 302(a)(3)(ii) and 302(a)(1) ("Section 302(a)(3)(ii)" and "Section 302(a)(1)," respectively). Seinfeld maintains that Section 302(a)(3)(ii) provides personal jurisdiction over European Collectibles because he has made a *prima facie* showing that: (1) European Collectibles committed a tortious act outside of New York by making misrepresentations in California, (2) Seinfeld's causes of action arise out of those misrepresentations, (3) Seinfeld suffered direct injury in New York when he paid for the Vehicle from his New York bank account in reliance on the misrepresentations, (4) European Collectibles expected or reasonably should have expected its

misrepresentations to have consequences in New York because European Collectibles executed the Purchase Order, which listed Seinfeld's name and New York address, and (5) European Collectibles derives substantial revenue from interstate or international commerce, as indicated by the representations European Collectibles made on its website. Seinfeld claims that European Collectibles is also amenable to personal jurisdiction under Section 302(a)(1) because Seinfeld has made a *prima facie* showing that European Collectibles knowingly contracted to supply the Vehicle to a New York domiciliary.

## II.  <u>LEGAL STANDARD</u>

The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. <u>See</u> <u>Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.</u>, 722 F.3d 81, 84 (2d Cir. 2013).[3] The showing the plaintiff must make depends on the procedural stage of the litigation. Where, as here, discovery has not yet begun, the plaintiff must allege facts constituting a *prima facie* showing of personal jurisdiction. <u>See</u> <u>id.</u> When reviewing a motion to dismiss for lack of personal jurisdiction, the Court must construe all allegations "in the light most favorable to the plaintiff"

---

[3] Unless otherwise indicated, all case quotations omit any internal quotation marks, citations, and alterations.

and resolve all doubts in the plaintiff's favor, "notwithstanding a controverting presentation by the moving party." Pearson Educ. v. Shi, 525 F. Supp. 2d 551, 555 (S.D.N.Y. 2007) (quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)). Nevertheless, conclusory allegations do not suffice; the plaintiff must allege jurisdiction with factual specificity. DeLorenzo v. Viceroy Hotel Grp., 757 F. App'x 6, 8 (2d Cir. 2018) (quoting Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998)).

Federal district courts ordinarily follow the law of the state in which they sit to determine "the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). However, "the Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." Walden v. Fiore, 571 U.S. 277, 283 (2014). Accordingly, the plaintiff must show both that state law extends the court's jurisdictional reach to the defendant and that exercising jurisdiction comports with due process. Charles Schwab Corp. v. Bank of Am. Corp., 833 F.3d 68, 82 (2d Cir. 2018).

## III. **DISCUSSION**

A.   New York Long Arm Jurisdiction

Seinfeld asserts that both Sections 302(a)(1) and 302(a)(3)(ii) of New York's long arm statute extend the Court's jurisdictional reach to European Collectibles. For the reasons discussed below, the Court agrees.

1.   Section 302(a)(1)

Section 302(a)(1) provides "personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." N.Y. C.P.L.R. 302(a)(1). Where, as here, a plaintiff relies on the contracting prong of Section 302(a)(1), he must show (1) that the defendant "purposefully availed itself of the privilege of conducting activities within [New York] by . . . contracting to supply goods or services in New York" and (2) that the plaintiff's "claim[s] . . . arise from . . . the contract to supply goods or services." D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Piniero, 78 N.E.3d 1172, 1175 (N.Y. 2017).[4] "Determining purposeful availment is an objective inquiry, which always requires a court to closely

---

[4] When describing how a plaintiff may establish personal jurisdiction under Section 302(a)(1), the New York Court of Appeals "tend[s] to conflate the long-arm statutory and constitutional analyses . . . ." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 247 (2d Cir. 2007).

examine the defendant's contacts for their quality." Al Rushaid v. Pictet & Cie, 68 N.E.3d 1, 7 (N.Y. 2016). The standard for whether a plaintiff's claims arise from the contract to supply goods is "relatively permissive" and requires "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." D & R Glob. Selections, 78 N.E.3d at 1175 (quoting Licci v. Lebanese Can. Bank, SAL, 984 N.E.2d 893, 901 (N.Y. 2012)).

Seinfeld argues that these requirements are met because European Collectibles knowingly contracted to supply the Vehicle to a New York resident and because Seinfeld's claims arise from that transaction. (Dkt. No. 19, at 3; Third-Party Compl. ¶ 27.) However, Seinfeld does not allege that European Collectibles actually shipped the Vehicle to New York. Accordingly, the Court must determine whether Section 302(a)(1) provides jurisdiction over a seller who supplies goods with knowledge that the goods are destined for a purchaser residing in New York, regardless of whether the seller actually shipped them to New York.

Because the New York Court of Appeals has not explicitly addressed this question, this Court must review available sources -- including the statutory language, legislative history, and state and federal case law -- to predict how

that court would resolve the issue. Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994).

The New York Legislature added the "contracts anywhere" prong to the statute in 1979. The New York Law Revision Commission proposed the amendment to "extend New York long arm jurisdiction to [constitutionally] permissible limits." Law Revision Commission, *Recommendation of the Law Revision Commission to the 1979 Legislature: Relating to Revision of Certain Long Arm Jurisdiction Provisions in Article 3 of the Civil Practice Law and Rules*, 1979 N.Y. Laws 1451, 1453 (McKinney). The amendment was, in part, a response to judicial decisions that construed the "transacts any business within the state" clause literally, holding that a "defendant or his agent must have been physically present in the state" for courts to exercise personal jurisdiction over him. Id. at 1452. The Commission intended the proposed language to, among other things, extend personal jurisdiction to a defendant who contracts to send goods into New York, regardless of whether or not he performs.

This legislative history indicates that the Court of Appeals, in applying the statute, would interpret it broadly so as to authorize jurisdiction over a defendant who contracts to supply goods that it knows are destined for a New York resident, and thus likely to end up in New York. Such an

interpretation is consistent with the language of the statute, which refers not to "goods shipped" to New York but "goods supplied" to New York. See Roberts-Gordon LLC v. Pektron PLC, 999 F. Supp. 2d 476, 479 (W.D.N.Y. 2014).

In addition to the legislative history and text, decisions of New York State's Appellate Division are "helpful indicators" of how the Court of Appeals would rule and consequently are due proper regard. Michalski v. Home Depot, Inc., 225 F.3d 113, 116 (2d Cir. 2000). In Paradise Products Corp. v. Allmark Equipment Co., 526 N.Y.S.2d 119, 120 (N.Y. App. Div. 2d Dep't 1988), the Second Department held that New York courts lacked personal jurisdiction over the nonresident seller of a kettle that the plaintiff picked up from the seller's out-of-state location where the defendant only "may" have known the product would end up in New York. Of note, the Paradise court did not base its decision on an analysis of Section 302(a)(1) but, instead, on due process principles. See id. ("It cannot be said that Allmark's conduct and connections with New York are such that it should reasonably have anticipated being hailed into court here."); Roberts-Gordon, 999 F. Supp. 2d at 480 (analyzing basis for decision). In two subsequent cases, the Appellate Division relied on Paradise to hold that a defendant's "knowledge that its goods were destined for the state" was insufficient to sustain

jurisdiction. See SBR Realty Corp. v. Pave-Mark Corp., 572 N.Y.S.2d 705, 707 (N.Y. App. Div. 2d Dep't 1991); Carpino v. Nat'l Store Fixtures, 712 N.Y.S.2d 684, 686 (N.Y. App. Div. 3d Dep't 2000). Yet, in neither case did the Appellate Division discuss the meaning of Section 302(a)(1) or interpret the term "supply" as used in that section. See SBR, 572 N.Y.S.2d at 707; Carpino, 712 N.Y.S.2d at 686. Because these decisions appear to be driven by the due process concerns articulated in Paradise, rather than an interpretation of Section 302(a)(1), the Court is not persuaded that they are strong indicators of how the Court of Appeals would interpret Section 302(a)(1). See Roberts-Gordon, 999 F. Supp. 2d at 480.[5]

More relevant to the issue before this Court is the Third Department's decision in Anderson Development Corp. v. Isoreg Corp., 546 N.Y.S.2d 720 (N.Y. App. Div. 3d Dep't 1989). There, the court held that Section 302(a)(1) provided jurisdiction over a seller where facts indicated that the seller "kn[ew]

---

[5] Arouh v. Budget Leasing, Inc., 883 N.Y.S.2d 4, 5 (N.Y. App. Div. 1st Dep't 2009) bears only superficial similarities to the case at hand. There, the First Department determined that Section 302(a)(1) did not extend jurisdiction over a Texas car dealer "since the car was to be picked up in Texas." Of note, however, the seller in that case did not actually contract to sell the car to a New York resident; the parties had merely "negotiated the potential purchase of an automobile." Id. At most, they agreed to an option contract. See id. Thus, Arouh offers little insight into how the Court of Appeals would apply Section 302(a)(1) in the present case, in which the parties reached an agreement regarding the sale of the Vehicle to a New York resident.

that the [goods] were destined for New York." Id. at 721. The court specifically noted that "[p]laintiff's purchase contract and defendant's sales order and bill of lading all provide[d] for shipment to New York and defendant collected New York sales tax in connection with the transaction." Id. The court rejected the defendant's claim that "shipment of the [goods] F.O.B. defendant's place of business acted to divest New York of jurisdiction." Id. The court reasoned that Section 302(a)(1) "require[es] only that defendant contract to supply goods in the State, whether actually shipped or not . . . ." and that nothing before the court "indicates . . . that the Legislature intended to give any jurisdictional import to [] delivery terms." Id.; accord Melendez v. Prof'l Mach. & Tool Co., 190 A.D.2d 657, 658 (N.Y. App. Div. 2d Dep't 1993) (deeming F.O.B. clause irrelevant to whether Section 302(a)(1) provides jurisdiction); Drake Am. Corp. v. Speakman Co., 144 A.D.2d 529, 531 (N.Y. App. Div. 2d Dep't 1988) (same).

Consistent with the Third Department's approach in Anderson, federal district courts within the Second Circuit have interpreted Section 302(a)(1) as providing jurisdiction over nonresident defendants who contract to supply goods with knowledge that the goods are destined for New York, regardless of the shipping arrangements. See, e.g., Roberts-Gordon, 999

14

F. Supp. 2d at 481 (rejecting the argument that Section 302(a)(1) does not authorize the exercise of personal jurisdiction based solely on defendant's knowledge that its goods were destined for New York); Eugene Iovine, Inc. v. Rudox Engine and Equip. Co., 786 F. Supp. 236, 240-41 (E.D.N.Y. 1992) (holding that Section 302(a)(1) authorized jurisdiction over a Massachusetts corporation that knew its goods "were destined for New York," notwithstanding that it contracted only with a New Jersey corporation, which picked up the goods in Massachusetts); Columbus McKinnon Corp. v. China Semiconductor Co., No. 18-cv-211E, 1989 WL 82455, at *4 (W.D.N.Y. July 19, 1989) (holding that a manufacturer "contracted to supply goods in New York" where it must have known that goods it supplied to a foreign entity "were ultimately destined for New York . . . when it contracted to manufacture them").

Based on the text and legislative history of Section 302(a)(1), a review of decisions by the New York State Appellate Division, and the decisions of other federal courts in this Circuit, the Court is persuaded that the New York Court of Appeals would hold that Section 302(a)(1) provides jurisdiction over nonresident sellers who supply goods that the seller knows or should know are destined for New York,

regardless of whether the seller actually ships them to New York.

Applying this rule to the case at hand, Seinfeld has made a *prima facie* showing that, by contracting to supply the Vehicle to a New York resident with knowledge that ultimately it was destined for New York, European Collectibles purposefully availed itself of the privilege of conducting business activities in New York. Although European Collectibles denies that it knew the Vehicle was destined for New York, that defense raises a factual issue that cannot be resolved on a motion to dismiss. Rather, the Court must decide the issue on the basis of Seinfeld's allegations and may not consider European Collectibles' factual claims at this stage. See Dorchester Fin. Sec., 722 F.3d at 86. Seinfeld alleges that, on the day of the sale, European Collectibles executed the Purchase Order, which identifies Seinfeld as the buyer of the Vehicle and provides his New York address. (Third-Party Compl. ¶ 49; Purchase Order). The line in the Purchase Order where the seller may list the applicable sales tax contains a handwritten note that appears to read, "Out of State Sale" (see Purchase Order), which suggests that European Collectibles paid attention to the buyer's address, while acknowledging that the sale was not made in New York. These allegations collectively support a reasonable inference that,

at the time European Collectibles contracted to sell the Vehicle, it contemplated supplying the Vehicle in New York. See, e.g., Roberts-Gordon, 999 F. Supp. 2d at 480 ("[P]urchase orders and invoices . . . make clear that the [goods] were being shipped to New York."); Anderson, 546 N.Y.S.2d at 721 (inferring defendant's "knowledge that [goods] were destined for New York" from the purchase contract, sales order, and bill of lading). Under such circumstances, European Collectibles' assent to the sale constitutes an act of purposeful availment within the meaning of Section 302(a)(1). See Columbus McKinnon, 1989 WL 82455, at *4. And, because Seinfeld's claims are related to this contract, he has satisfied the permissive "arising under" requirement of Section 302(a)(1). See D & R Glob. Selections, 78 N.E.3d at 1175.

2. Section 302(a)(3)(ii)

Section 302(a)(3)(ii) provides personal jurisdiction over any nonresident who:

> commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

N.Y. C.P.L.R. 302(a)(3)(ii). As the New York Court of Appeals has explained, this subsection authorizes personal

jurisdiction only if five elements are met: (1) the defendant committed a tortious act outside of New York; (2) the cause of action arises out of that tortious act; (3) the act caused injury to a person or property within New York; (4) the defendant expected or reasonably should have expected the act to have consequences in New York; and (5) the defendant derives substantial revenue from interstate or international commerce. Penguin Grp. (USA) v. Am. Buddha, 946 N.E.2d 159, 162 (N.Y. 2011).

a)  Tort Committed Outside New York

European Collectibles does not dispute that Seinfeld has alleged the commission of tortious acts in California. (See generally Dkt. Nos. 17 and 19). Indeed, Seinfeld has alleged that European Collectibles made statements or omissions in California that constitute fraudulent misrepresentations, negligent misrepresentations, and fraudulent concealment. (Third-Party Compl. ¶¶ 67-89.)

b)  Cause of Action Arising Out of the Tortious Act

Seinfeld's causes of action for fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment arise from the alleged misrepresentations and omissions. Provided that the other requirements of Section 302(a)(3) are met with regard to these claims, such that European Collectibles is properly before

the Court, the Court may entertain Seinfeld's other causes of action because they derive from the same nucleus of operative fact. Hanly v. Powell Goldstein, L.L.P., 290 F. App'x 435, 438 (2d Cir. 2008) ("[O]nce a defendant properly is brought before a district court on a claim covered by Section 302(a)(3), the court may entertain claims that are not expressly covered by the long-arm statute, so long as they derive from the same nucleus of operative fact as claims that are.").

    c)   Injury in New York

Seinfeld claims that he suffered injury in New York when, in reliance on European Collectibles' misrepresentations, he wired funds from his New York bank account to European Collectibles. (Dkt. No. 19, at 2.)

In cases involving commercial torts, where damages are solely economic, the New York Court of Appeals determines the location of the injury by identifying where the "direct injury" occurred. Fantis Foods, Inc. v. Standard Importing Co., Inc., 402 N.E.2d 122, 126 (N.Y. 1980); Sybron Corp. v. Wetzel, 385 N.E.2d 1055, 1058-59 (N.Y. 1978)(identifying non-"remote" injury); Vincent C. Alexander, *2016 Supplementary Practice Commentary* to N.Y. C.P.L.R. 302 (McKinney 2019) ("[T]he situs of injury in a commercial tort case ordinarily is . . . the place of direct economic loss."). The "direct

injury" -- although sometimes referred to as the original event which caused the injury -- is distinguishable from the initial tort as well as "the indirect financial loss resulting from the fact that the injured person resides" in New York. Fantis Foods, 402 N.E.2d at 125-26; Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez (BBL I), 171 F.3d 779, 791 (2d Cir. 1999); Sybron, 385 N.E.2d at 1059. For example, where a defendant allegedly converted cheese ordered by a New York plaintiff for sale in Chicago before the cheese reached the United States, the Court of Appeals reasoned that the direct injury occurred when the plaintiff lost sales in Chicago, not when the tort was committed abroad or when the plaintiff felt the ultimate economic consequences of the lost sales in New York. See Fantis Foods, 402 N.E.2d at 125-26 & nn.3-4. As the Second Circuit explained in BBL I, the location of the direct injury can be identified by determining "where the first effect of the tort was located that ultimately produced the final economic injury." 171 F.3d at 792; accord Fantis Foods, 402 N.E.2d at 125-26 & nn.3-4 (no direct injury in New York where the first effect of the tort was lost sales in Chicago); Sybron, 385 N.E.2d at 1059 (direct injury in New York where the first effect of the out-of-state tort was the loss of New York customers).

While the New York Court of Appeals has not analyzed the location of direct injury in a case involving out-of-state misrepresentations, see Miller Inv. Tr. v. Xiangchi Chen, 967 F. Supp. 2d 686, 696 (S.D.N.Y. 2013), the Second Circuit has predicted that the Court of Appeals would identify the place of reliance as the place of direct injury. See BBL I, 171 F.3d at 791-93. In BBL I, a New York bank alleged that a foreign law firm tortiously failed to disclose certain negative information about a potential borrower and that, in reliance on the law firm's opinion, the bank disbursed funds to the borrower, who later defaulted, causing loss to the bank. See id. at 782-84. The Second Circuit determined that the direct injury occurred in New York when the plaintiff disbursed funds in reliance on the misrepresentations, explaining that the plaintiff's reliance was the "first effect of the tort" and "ultimately produced the final economic injury." Id. at 792. No subsequent developments in New York law cast doubt upon the Second Circuit's prediction. Indeed, other courts in this district have applied it in recent years. See, e.g., Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp., No. 14-cv-4819, 2015 WL 13019620, at *7 (S.D.N.Y. Sept. 21, 2015) ("These allegations, which do not address where Plaintiffs acted in reliance on the

purported misrepresentations, are not sufficient to show that [defendant]'s acts caused injury in New York.").[6]

Based on the preceding analysis, the Court concludes that Seinfeld has made a *prima facie* showing of direct injury in New York. The "first effect" of European Collectibles' misrepresentations occurred when Seinfeld wired funds from New York to European Collectibles, and this act of reliance led to the "ultimate . . . loss" that Seinfeld incurred when he received an allegedly inauthentic vehicle. BBL I, 171 F.3d at 792.

    d) <u>Reasonable Expectation of Consequences in New York</u>

Seinfeld must also make a *prima facie* showing that European Collectibles "reasonably should have foreseen New York consequences." <u>Fantis Foods</u>, 402 N.E.2d at 126. A seller of goods should reasonably foresee consequences in New York if, at the time of the sale, facts indicated that New York was the ultimate destination of the goods. See <u>LaMarca v.</u>

---

[6] To the extent certain Appellate Division decisions in commercial tort cases conflate the location of the injury with the location of the tort, such decisions are inconsistent with the New York Court of Appeals' decisions. Vincent C. Alexander, *2016 Supplementary Practice Commentary* to N.Y. C.P.L.R. 302 (McKinney 2019) (noting that despite "the Court of Appeals' likely adherence to the rule that the situs of injury in a commercial tort case ordinarily is . . . the place of direct economic loss . . . the First Department . . . persists in holding that the situs of injury in commercial tort cases is the same as that in personal injury cases"). <u>Compare</u>, *e.g.*, <u>CRT Invs., Ltd. v. BDO Seidman, LLP</u>, 925 N.Y.S.2d 439, 440-41 (N.Y. App. Div. 1st Dep't 2011) (determining that injury occurred where the allegedly fraudulent audit was performed and "not where any financial loss or damages occurred"), <u>with Sybron</u>, 385 N.E.2d at 1058-59 (finding injury in New York based on in-state "economic injury" where alleged tort occurred in New Jersey).

Pak-Mor Mfg. Co., 735 N.E.2d 883, 886 (N.Y. 2000) (finding expectation of consequences in New York based on invoice indicating goods were "destined for use in New York"); cf. Fantis Foods, 402 N.E.2d at 125 n.4 (no expectation of consequences in New York where invoice indicated goods were ultimately destined for Chicago).

Here, Seinfeld alleges that, on the day of the sale, European Collectibles executed the Purchase Order, which identifies Seinfeld as the buyer of the Vehicle and provides his New York address. (Third-Party Compl. ¶ 49; Purchase Order.) Suggesting that European Collectibles paid attention to the buyer's address, the line in the Purchase Order where the seller may list the applicable sales tax contains a handwritten note that appears to read, "Out of State Sale." (Purchase Order.) These allegations indicate that, at the time of the sale, European Collectibles reasonably should have foreseen that the Vehicle was ultimately destined for New York and, accordingly, should have expected New York jurisdiction consequences. LaMarca, 735 N.E.2d at 886; cf. Fantis Foods, 402 N.E.2d at 125 & n.4.

e)    Substantial Interstate or International Revenue

Finally, Seinfeld must show that European Collectibles "derived substantial revenue from interstate or international commerce." LaMarca, 735 N.E.2d at 886. This requirement is

"designed to narrow the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character." Id. "[R]evenue may be deemed 'substantial' where the amount of the revenue the defendant derives from . . . interstate/international commerce is great, even though it comprises only a small portion of the defendant's overall business." Williams v. Beemiller, 72 N.Y.S.3d 276, 281 (N.Y. App. Div. 4th Dep't 2018), aff'd, 130 N.E.3d 833 (N.Y. 2019); Allen v. Canadian Gen. Elec. Co., 410 N.Y.S.2d 707, 709 (N.Y. App. Div. 3d Dep't 1978), aff'd, 409 N.E.2d 998 (N.Y. 1980). Out-of-state revenue that exceeds $1 million is "presumptively substantial." Related Cos. v. Ruthling, No. 17-cv-4175, 2017 WL 6507759, at *7 (S.D.N.Y. 2017).

Here, the single sale to Seinfeld brought European Collectibles revenue of $1.2 million. (Third Party Compl. ¶ 46.) Given the size of this transaction, European Collectibles' out-of-state revenue is presumptively substantial. See id. Seinfeld also alleges that European Collectibles represents on its website that it "'restor[es] cars for Domestic and International clients'" and has "'over 30 years of experience in shipping vehicles Nationally and Internationally.'" (Id. ¶ 28.) This allegation further

indicates that European Collectibles is not a business of local character that would be outside the reach of Section 302(a)(3)(ii).

Having made a *prima facie* showing that the requirements of Sections 302(a)(1) and 302(a)(3)(ii) of New York's long-arm statute are met, Seinfeld has established that state law extends the Court's jurisdictional reach to European Collectibles.

B.    DUE PROCESS

Because the "the Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts," Seinfeld must also show that exercising personal jurisdiction over European Collectibles comports with due process. Walden, 571 U.S. at 283.   The Supreme Court has established three conditions that govern when courts may exercise personal jurisdiction over a defendant who is not "fairly regarded as at home" in the state. See In re del Valle Ruiz, 939 F.3d 520, 529 (2d Cir. 2019). First, the defendant must have "purposefully directed his activities at . . . the forum . . . . such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985); see Walden, 571 U.S. at 285 (emphasizing that the relevant contacts are those between the defendant

and the forum, not those between the defendant and a resident of the forum). Second, the litigation must "arise out of or relate to those activities." Burger King, 471 U.S. at 472. With regard to the second requirement, the Second Circuit has explained that "[w]here the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 344 (2d Cir. 2018). Third, the court must "determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." Burger King, 471 U.S. at 476.

Here, considering the totality of circumstances -- including the allegations indicating that European Collectibles decided to supply the Vehicle to Seinfeld with knowledge that it was ultimately destined for New York -- the Court concludes that European Collectibles purposefully directed its activities at New York. Although European Collectibles emphasizes that its actions were all taken from within California, "physical entry into the State . . . through goods . . . is certainly a relevant contact." See Walden, 571 U.S. at 285. Moreover, European Collectibles did not merely place the Vehicle into "the stream of commerce" with knowledge that it "may or w[ould] sweep the [Vehicle]

into [New York]." Cf. Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102, 112 (opinion of O'Connor, J.). Rather, as evinced by the Purchase Order, European Collectibles purposefully targeted New York by offering and contracting to supply the Vehicle to Seinfeld, knowing that it was ultimately destined for New York. See Roberts-Gordon, 999 F. Supp. 2d at 481 (deeming "[defendant]'s decision to contract with a New York company, doing roughly $1 million in business with that company, and knowing that the goods were destined to be used in a New York factory" to establish personal availment).

The suit also arises out of European Collectibles' contacts with New York. The Purchase Order, in which European Collectibles represented the Vehicle to be a 1958 Porsche 356 Carrera 1500 GT Speedster (see Purchase Order), acts as both a link to New York and the proximate cause of each of Seinfeld's claims.

Once the plaintiff has made a threshold showing that the suit arises from the defendant's contacts with the state, the defendant may nonetheless defeat jurisdiction by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez (BBL II), 305 F.3d 120, 129 (2d. Cir. 2002). Relevant considerations

include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Id. As European Collectibles has not even addressed these considerations in its letter-briefs, it has not convinced the Court that "this case is the exceptional situation where exercise of jurisdiction is unreasonable even though minimum contacts are present." Id.

## IV. CONCLUSION

Seinfeld has met his burden of establishing, *prima facie*, this Court's jurisdiction over European Collectibles in this action. However, this conclusion does not relieve Seinfeld of his subsequent obligation to establish jurisdiction by a preponderance of the evidence after discovery, should European Collectibles continue to contest the issue. Dorcheser Fin. Sec., Inc. Fin. Sec., Inc., 722 F.3d at 81; Columbus McKinnon, 1989 WL 82455, at *2 n.6.

## V. ORDER

Accordingly, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by third-party defendant European Collectibles, Inc. ("European Collectibles") (Dkt. Nos. 17 and 20) to dismiss the Third-Party Complaint (Dkt. No. 11) of third-party plaintiff Jerry Seinfeld ("Seinfeld") pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is **DENIED**; and it is further

**ORDERED** that plaintiff Fica Frio Limited, Seinfeld, and European Collectibles show cause by letter-briefs not exceeding three pages each submitted to the Court within ten (10) days of the date of this Order why the Court should not dismiss the case on the basis of forum non conveniens.

**SO ORDERED.**

Dated:    New York, New York
          21 January 2020

                                    _____
                                         Victor Marrero
                                         U.S.D.J.